All right, Ms. Roberts, we're pleased to hear from you. May it please the Court, Bettina Roberts on behalf of the appellant Cashmere Cazeau. Your Honors, Cashmere Cazeau is asking that this Court vacate the judgment below and remand this case for resentencing. He's asking this because the District Court upwardly departed from a three to nine month guideline range at his revocation hearing in March of 2011 and imposed a sentence of 30 months imprisonment. This sentence represented a 300% increase over the top end of the guideline range, but more importantly, it represented a sentence that the District Court would likely not impose for Mr. Cazeau to be resentenced today. This is the case because this 30 month sentence was the product of multiple errors on the part of the District Court. And the most glaring of these was the District Court's reliance on Mr. Cazeau's need for drug treatment, and that is the first reason I'd like to talk to you about today. Ms. Roberts, I did check, actually, the Bureau of Prisons website, and I noticed that he's due to be released on June 6th. That's true, Your Honor. Barely 90 days from now. That's true. In fact, less than 90 days from now. Is he in community confinement now? He is. You've been in touch with him? We did try to get in touch with him. We were not able to make contact with him. But you do know he's in a halfway community confinement? Okay. Do you know why... well, never mind, go ahead. Do I know why we're here today and we weren't here earlier? Is that your question? I was going to ask that, but I don't want to... I was hoping that one of you could shed some light on that issue. That's a fair response. That's a very fair response. I would argue that at the time of the revocation hearing, the District Court did not have the benefit of Tapia or this Court's decision in Bennett. And we now know that the reliance on the drug treatment need was in clear violation of both of those things, both of those cases. The government has conceded that. They've conceded that the District Court's reliance on that factor was an error. Instead, they simply argue that this was a harmless error because the District Court could have reached that conclusion on the basis of other reasons that it gave. However, the relevant inquiry before the Court today is not whether the District Court could or couldn't have come to that conclusion on the basis of those other reasons. But... Do we have to treat this as plain error? Yes, I would concede that this is a plain error review. However, the question for this Court today is whether the District Court would have done the same thing if this case were to be remanded. And we would argue that it would not. In fact, we would... Judge Fox is a pretty tough sentencer anyway. Judge Fox is a pretty tough sentencer. That is certainly true. But he also is a judge... I'm not the only one who notices that. But, you know, he was trying to help Mr. Cazzo. And to quote Tapia, the sentencing court, in this case Judge Fox, did nothing wrong. And, in fact, maybe did something quite right when he tried to give Mr. Cazzo the treatment that he needed. You're saying he can make a recommendation that there be some rehabilitative programs? And district judges very often do that. That's correct, Your Honor. He's certainly allowed to consider the fact that Mr. Cazzo was definitely in need of drug treatment. We wouldn't argue... In fact, isn't that usually a request that the defense makes? It is. So they can go to the drug rehab program and shorten their sentence? That's correct. It's a 30-month sentence to get there. Exactly. And that is one of the main reasons that we would argue that Judge Fox gave the sentence for exactly the reason that he couldn't... He gave the sentence so that the defendant could get RDAP, the Residential Drug Abuse Program treatment, and not... It wasn't arbitrary. He gave him 30 months because 30 months, assuming Mr. Cazzo were to receive all his good time credit, would equate to about 27 and a half months. And then factoring in the time he'd been in prior to his revocation hearing comes dangerously close to that magic... Apparently he didn't do too well. I'm sorry? I said apparently he didn't do too well because he'd have been released by now. Well... If he had applied for the RDAP, if he'd been accepted, if he had successfully completed it, and if he didn't have any violent or gun offenses in his background and otherwise satisfied the criteria, he would have been released by now. That's correct, Your Honor. But that only bolsters my point that if Mr. Cazzo did need drug treatment, and we don't argue that he did not. Everyone, I think, agrees that he did. The district court, if that was really what the district court was trying to do, he could have ordered inpatient treatment. He had no authority to order RDAP. Even after sequester? Of course, we didn't know about the sequester. We didn't know about the sequester at the time. This was, of course, in March 2011. Things were a little bit rosier then. Does the prohibition in the statute apply if the treatment is just adjunct to other reasons rather than being the reason? This is not a case where Judge Fox explicitly said, this is the only reason why I'm giving this sentence. However, I think there's no smoking gun. But there are several circumstantial reasons, the primary one of which being the fact that it was not an arbitrary number. He didn't double the guideline range or give him a few months above. He gave him exactly pretty much what he needed to give him so that he'd be eligible for the treatment that he was trying to impose. It was also the very first reason that Judge Fox gave. He said, I'm imposing a 30-month sentence for the following reasons. And then, bam, the very first one was so that Mr. Cazot can get the intensive drug treatment program while he's in BOP. I think that factor, combined with the fact that the number of months was carefully chosen, combined with Judge Fox's clear pattern, as we cited in our brief, he did this time and time again. He would impose a much greater sentence on a defendant and explicitly say, I'm doing this so he can get drug treatment. And prior to Tapia, he was affirmed again and again by this court for doing exactly that. But in 2011, pre-Tapia, he had no idea that he couldn't do that. I'm interested in the statement you made. It's news to me that the treatment in the prison system is 39 months long. It's 24 months long. 24. It's a 24-month program. It's almost two years. Yes. It's exactly two years. And that's why you have to, because of good time and because of the fact that Mr. Cazot was in for a little bit before his revocation hearing, if you'd given him 24 months, he wouldn't have been eligible. So that's why he went up from 24 months to 30. As far as the use of the prior reduction of the sentence and everything, that's not necessary for us to get into if we revand on Bennett grounds. I would argue that this needs to go back simply on the Tapia Bennett grounds. I just don't understand the whole question of whether the prior reduction and everything. If there's a Tapia remand, we don't need to get into that. I agree. And I'm certainly happy to explain our reasons for why we think those were improper grounds. I'm just not all that excited about reaching issues I don't have to. That's correct, Your Honor. I think that this is clearly a case where... If we affirm the sentence, we have to reach it. That's true. But I would argue in this case that I think we can tell from the record that the district court would quite likely do something different. Your view is that it really is a plain Tapia Bennett error. That's correct, Your Honor. And it's pretty straightforward and it plainly affected the defendant's substantial rights. I mean, if you have a guideline range which goes from three to nine months and there's an upward departure to 30 months, if that's not affecting someone's substantial rights... I'm not sure what is. I don't know what it is. That's correct. The whole idea of Tapia and Bennett is that the state just can't put somebody away because they think they're in need of this sort of help. I mean, I was very relieved to see Tapia come down because it enunciates an important view of freedom. I realize it was a statutory case. But what it says is that confinement is to be tied to actual criminal violations or, in the sense of revocation sentencing, to actual violations of conditions of supervised release and not on the state's idea of what's good for you and what's not. Exactly. I mean, that can be a reason for recommending, but as far as the duration of confinement, no. And it's the whole idea of, you know, a big brother that we know what's best for you. And maybe they do and maybe they don't, but that's what we were trying to get at at Bennett, that this just isn't a reason for putting someone in jail, the fact that we know what's best for you. It has to be tied to a violation of a condition or a criminal statute. Otherwise, the state assumes a role it's not supposed to assume. I realize they're statutory decisions, but they're important. I think they express even larger values. Ambassador, I certainly agree with everything you just said. You know, I largely agree as well. But the sad fact is, for example, in Maryland, we were just talking about Maryland in the prior case, for years, until fairly recently, if a mother wanted her son, her drug-addicted son, to get drug treatment, what she did, more often than anything else, is turn him in to the police. Because our crazy criminal justice system devotes resources, or used to, resources for drug treatment on the inside, behind the wall, instead of civil society making treatment on demand available, or something close to that, on the outside of the wall. So people had to commit car burglaries so that they could get convicted of something and be sent into local detention centers where they would get drug treatment, and come out on probation where they would get drug treatment. It's crazy. But I largely agree with Judge Wilkinson's sentence. And, you know, we're really not trying to say that. And by the way, you know, Tapia wasn't applauded across the board. I mean, the fact of the matter is, to the extent the Supreme Court is saying, as it did in Tapia, that rehabilitation is not a goal of incarceration, a lot of us have a problem with that. I mean, under the guidelines, that's what the Sentencing Commission tells us, but if rehabilitation is not one of the purposes of sentencing, and thus one of the purposes of incarceration, which is a part of sentencing, I don't know what to say about that. But I agree with Judge Wilkinson about Big Brother. And Judge Fox was trying to help Mr. Kezzo, and I'm not saying he did it with the best of intentions. Exactly. But doesn't Tapia leave room for rehabilitation as an element of sentencing, preserving the recommendatory... It does. It leaves room for the judge to consider that as a reason for why he might impose a sentence. Not a sentence of incarceration. But not to rely on it. It's as simple as it can be. You don't send somebody to the federal prison or federal correctional institution for rehabilitation. Rehabilitation's got to be taken care of in some other form. I apologize if I wasn't clear. No, no, go ahead. The district judge is allowed to consider the fact that the defendant may need drug treatment in assessing the situation, but not allowed to rely on that when they impose a longer sentence of incarceration. And I think that Judge Fox now having the benefit of the Tapia and Bennett decisions would... It is clear to me that he would quite likely do something different if he were given a chance to... Do something different or say something different? Well, we simply can't know. He may have abruptly departed to a lesser extent. He may have imposed inpatient treatment. He might have given a guideline sentence. We simply don't know. And the very fact that we don't know is the primary reason that we would argue this case needs to be reversed and remanded. Well, thank you. Ms. May Parker, we're happy to hear from you. I guess the question here is, we know... We all agree that this is error. Yes. Do we not? And we all agree that this is plain error under Tapia-Bennett. Yes, we agree that it was error and it was plain. We do not agree... The question is whether it's harmless or whether it was... Somehow it didn't affect the substantial right. But I don't understand how it could be harmless or not affecting a substantial right given the fact that the judge led off with this reason. That wasn't the case in Bennett or even Tapia. It certainly wasn't the case in Bennett. It was really subsidiary. But here it's the lead reason. And in addition, the upward departure from the recommended revocation sentence is tailored to the rehabilitative need. So how can we overlook something like that? Well, first of all... In light of Bennett. Okay. The fact that the court started with that can be looked at in different ways. It was the last thing discussed. The defendant, when he spoke to the court, told the court, look, I simply relapsed. When you look at the court's reasons, the court gave several reasons. And there is nothing about the Tapia error that distinguishes it as a driving force behind a sentence. And I think that's the discussion that Bennett was having. What was the driving force behind the sentence? And all you have here is simply what can be a coincidence of the court starting with the need for drug rehabilitation. However, when you examine the other reasons that the court gave for this sentence, you see that the court was really interested and very concerned about recidivism. Look, this is not a close case. This is not a close case because this defendant violated his supervised release five times in five months, within ten months of being placed on supervised release. The sentence is predicated on violation of the conditions of probation of supervised release. Nobody has any problem with that, with the violation. Bennett, I think, makes that clear. If the driving force is the violation of the conditions, then sure, that's right at the heart of that whole work. And I think that the case is made here because when you examine the reasons that the court gave as to why it imposed that sentence, if you take the drug rehabilitation and put that aside for a moment, the court looked at it. It started with drug rehabilitation, but it said the defendant's continued use of substance abuse posed a threat to society. That cannot be ignored. It's absolutely true. He had dirty urine within ten months of being placed on supervised release. And there could even be an upward departure on that. Based on that. And don't forget, here the defendant was facing 60 months. The court gave him 30. It gave him half of what it could have gave him. But if the court had said some of the things that you had said, including the failure of the urinalysis test and the rest. The court did say that. That's fine. And nobody has a problem with that. The court did say that. The court did talk about the fact that he. Unfortunately, he began the presentation. Maybe it was the last thing mentioned. It was the last thing mentioned. It was. I understand. I appreciate your point in that regard. But what I'm saying is that Tapia and Bennett are crystal clear on this point. If you have a need for rehabilitation driving the duration of sentences. And you don't tie things to violations of conditions or violations of crime or whatever. But purely rehabilitative needs. It becomes too much paternalism. Judge Wilkinson, there is nothing in this record that tells this court that rehabilitation was the driving force behind the court's sentence. There is nothing here. Judge Fox did not say, I'm giving you this sentence so that you can reach the threshold number of months needed for drug treatment. Now, he has said that in the past. It is not outside the purview of Judge Fox to say that. He didn't say that here. Had he said that, it would be a reasonable argument. But to say that he said that. Well, it's a speculation. It's a speculation at best. It's a speculation. And you cannot say that when, especially when a court is used to or known for saying, I'm giving you this sentence so that you can meet the threshold number of months to get drug rehabilitation. And when he didn't say that in this case. Well, I don't think we can go into a district judge's sentencing characteristics or what he usually said of the fact that, well, this district judge was accustomed to saying this, and now he said this. I'd be happy not to do that. But that's what was raised before this court. That's what you were talking about. You were talking about sentencing habits on the part of a particular district court. Well, I was responding to comments that were made that this is what Judge Fox does. So I'd be happy to stick to the record before the court here. And the record is that he said that he was imposing this sentence so the defendant can get rehabilitation, but continued to list a number of factors. I counted eight. One out of eight cannot be the driving force behind a sentence. And so I think that if you look at the record that is before the court, you will see that he mentions that once he is more concerned with recidivism, he mentions that many times, and he was looking at a defendant that had practiced recidivism before him, and that was the driving force behind the sentence that it was imposed. So I would ask the court to look carefully at the record without any form of speculation as to what he meant, and to really look at the reasons that he gave. And he gave them all equally. He never separated out the need for direct treatment as something that he considered to be the primary reason in this case. And so Judge Fox was trying to help the defendant, but Judge Fox saw a defendant who was a recidivist, and he saw him... I don't think that we're saying anything about recidivism here, or that we're not saying recidivism is an impermissible ground for an upward departure in a revocation sentencing context. And the background may be, it's just this one thing that... Just one thing. It's just this one thing. And you know, Judge Davis put it, I mean, tapia is not a cloudy opinion. It's not a cloudy opinion, but the question is, when there is a tapia error, is it such an error? Was it a driving force behind a sentence so that this court could say that if Judge Fox had excluded that, he would have given a different sentence? And I... Well, I think the record can tell you that too. I don't think you need to speculate. I think that if a court gives eight reasons and one's wrong, I think it's a reasonable inference that seven... Because these was... I really didn't... This other one did not play a part in hearing these other seven reasons and whatever, and the recidivism and the like. I don't think anybody would find fault with it. But you know what? But who knows? I mean, it's hard to say it doesn't matter or that it didn't affect substantial rights when you have an upward departure from three to nine months to 30 when 30 coincides with treatment eligibility when it's the lead-off reason. If in the face of all that we say, oh, harmless error, it doesn't matter, then almost nothing would be harmful. I mean, you'd undercut the whole idea of a tapia violation because we'd be saying, well, you can say this right at the start of the sentencing meeting and it flies in the face of a Supreme Court decision and the circuit president and oh, no bother. You'd just undercut the whole rationale for those decisions. The 30 coinciding with the amount of time needed for treatment, that's not something that's part of this record. It's not something that Judge Fox said. That's something that's being imported. I think I misunderstood the appellant lawyer. Is 21 months? 24. I mean, you're asking what she said? I understood her to say 21. That's what I'm asking. I may have misunderstood her. I believe that she said 24 months. Again, how does 30 months completely coincide with 24 months? That's not in a statement that I made. It's a statement that opposing counsel made and I was just, a statement made by Judge Wilkinson and so the point that I was making is that that is not part of this record. I'm sorry? More speculation. I mean, that is not what Judge Fox said. And so that we're stuck with the record that we have and what we have are at least eight reasons, one of which we concede it is incorrect. Now, if seven doesn't tip the scale, then what does? Why would one tip the scale more than seven unless the court says something that makes you believe that it was the driving force? And I submit to you that there's nothing in the record here that tells you that the court saw it as the driving force. Ms. May Parker, Judge Fox couldn't have a better advocate here defending his sentence. Well, I'm getting an education here on, I guess, the view of prisons and what they do. I've been told time and time again that they will not offer drug treatment for less than a year in prison. If you give more than a year, then they offer the treatment. Is that correct? I don't know. I don't know. I know that there are, depending on which drug treatment program you're getting, that there are... that BOP won't offer drug treatment. No, I don't know what the minimum time is. I used to think it was actually 36 months, but... Okay, well, I guess it's improper if it's not in the record. Yeah. It's 30. It's 30?  Okay, let's say it's 30 to... They build in enough time to transport the prisoner, to process him, classify him, et cetera, et cetera, et cetera, and you are not eligible for RDAB on a sentence of less than 30 months. Okay. It just physically can't happen. They won't waste their resources on someone who comes in for 18 months. I think the danger here in accepting that as a driving force, which is not part of this record, but let's say the court knows that, the danger is to minimize all of the other reasons that the court gave and to place emphasis on just that one reason and to say that that was Judge Fox's reason. And that's the problem. I mean, you have to take the district court at what the district court says, and we do it all the time. When the district court says something and it's clearly wrong, we admit it's wrong. But when the district court doesn't say something, it's just not fair. He did say this. But you concede error. He did not say it was the driving force behind his sentence. That's the point that I'm making. I'm not making the point that he didn't say that that's one of his reasons. I thought you conceded it was error here and that it was plain. It's error that is one of his reasons. You said it was plain error. Correct. And so the argument, your argument is that it didn't affect his substantial rights. Yes. Okay. That it's plain error that he used that as one of his reasons. Okay. But that it did not affect the substantial rights because we have seven other reasons and that the one reason cannot outweigh the seven other reasons unless the court What you're saying is that if we send it back, he's going to give them the same thing. Yes. And as Judge Wilkinson said, maybe, maybe not. And what I'm saying is that you can have some assurance. Of course, he won't get that opportunity because no matter what we do, this case will never get back before Judge Fox. That's true. Well, I mean, yeah, I mean, timing of course is a serious factor here. But I think that, you know, if you look and examine the reasons, the other reasons that he gave, you are more likely to find that he was very concerned with recidivism, which is proper, which is proper to impose this 30-month sentence that he did and that he would have imposed the 30-month sentence even without that reason. All right. I think we understand your point and we appreciate it. Thank you. And so I would just ask that you affirm the judgment of the district court. Thank you. Thank you so much. Ms. Roberts, you have some time for rebuttal. Thank you. I'll be very brief. I just wanted to touch on a couple of things that the government said. First, in terms of the argument that the fact the rehabilitative reason was the first reason not mattering, I would, you know, I would categorically submit that that's wrong. In Bennett, for example, it didn't, that wasn't even mentioned for several pages of the record and the court, and I believe it was your opinion, Judge Wilkinson, actually said the fact that it wasn't, didn't appear for several pages informed the decision. Clearly subsidiary. That's true, that it was the breach of trust. So I think that it being first here really is... Your part, your point is that it's hard to conclude that it didn't play a role of some measurable, some measurable role in a sentence when the judge leaves with that reason and when it's, when it matches treatment eligibility and, and when it's just been, it's just been discussed. I, the whole idea of it being the last thing discussed, that cuts both ways because it's the last thing discussed and the judge leads off with it might indicate, yeah, I'm persuaded by that. So I'm, I'm not, I'm not sure that it being the last thing, that again, it would be utter speculation, but I, I think the fact that it's the last thing discussed strikes me as a, a two-edged sword, you know, that's the, that's the punctuation, the information point to the whole sentencing argument. That's absolutely correct, Your Honor. We couldn't agree more with that, with that analysis of it and in terms of the fact that the government's argument that we're offering only speculation, I would argue also that that's also a double-edged sword and that also cuts both ways. They've, this is not a case where Judge Fox said, well, even if I can't do this on this basis, I would absolutely do it on these other seven basis or however many they say there are. Um, so we should, you know, again, we would just ask again that this case be remanded and so we can let Judge Fox do it. Again, the circuit precedent, that's important and, I don't know, last case we had   we have a circuit precedent and a Supreme Court precedent. It's important to stick to them. I, I agree, Your Honor, with the circuit precedent and the Supreme Court precedent. And with that, I would, I would simply rest and ask that you vacate the judgment and remand this case for resentencing. All right. We,
judges: J. Harvie Wilkinson III, Andre M. Davis, Jackson L. Kiser